UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA, ex-rel
MARIANNE D. GUZALL, and MARIANNE
D. GUZALL a/k/a MARIANNA GUZALL,
individually,

        Plaintiff,                Civil Case No. 13-cv-11327
                                            Honorable Linda V. Parker

v.

CITY OF ROMULUS, ALAN R. LAMBERT,
and BETSEY KRAMPITZ,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

      Marianne D. Guzall ("Mrs. Guzall"), a former employee of Defendant City of Romulus, filed this lawsuit against Defendants as a qui tam action alleging violations of the False Claims Act, and as an individual action alleging violations of her rights under federal and state law. Specifically, Mrs. Guzall alleges the following counts in her four hundred and twelve paragraph Amended Complaint:

    (I)    Retaliation and Retaliatory Discharge in Violation of 31 U.S.C. § 3730(h), public policy, and the First Amendment to the U.S. Constitution;

    (II)   Violation of Federal False Claims Act - Qui Tam and (RICO) Racketeer Influenced and Corrupt Organizations Act;

    (III)  Promissory Estoppel;

    (IV)    Due Process Violation and Hostile Work Environment Claim;

    (V)    Intentional Infliction of Emotional Distress;

    (VI)    Fraud - Intentional and/or Constructive Fraud - Conspiracy and Concert of Actions.

(Pl.'s Am. Compl., ECF No. 4.) Defendants are the City of Romulus (the "City" or "Romulus"), the City's former Mayor Alan R. Lambert ("Mayor Lambert"), and the City's former Chief of Staff Betsey Krampitz ("Ms. Krampitz"). Mrs. Guzall is represented in this action by her husband, attorney Raymond Guzall III ("Mr. Guzall").

Presently before the Court is Defendants' joint motion to disqualify Mr. Guzall as Mrs. Guzall's counsel based on the fact that he acted as an Assistant City Attorney for Romulus during the period relevant to Mrs. Guzall's lawsuit, while employed by and/or a partner, director, and officer of Seifman & Guzall, P.C. The motion has been fully briefed and the Court held a motion hearing on August 13, 2014. For the reasons discussed below, the Court concludes that Mr. Guzall should be disqualified from serving as Mrs. Guzall's counsel in this matter.

## I. Factual and Procedural Background

According to Mrs. Guzall's Amended Complaint, she was employed by the City as the Administrative Secretary to Mayor Lambert for approximately ten years, with her employment beginning on or about November 20, 2001 and terminating on

or about March 11, 2011. (Am. Compl. ¶¶ 11-14, ECF No. 4.) In 2000, Mr. Guzall started working with Attorney Barry Seifman ("Mr. Seifman") at the latter's law firm, Barry A. Seifman, P.C. ("firm"). (Defs.' Mot., Ex. 1 ¶ 4, ECF No. 31) Effective August 1, 2006, Mr. Guzall obtained an ownership interest in the firm and the firm then became known as Seifman & Guzall, P.C. (*Id.* ¶ 5.)

Mr. Seifman began serving as the City's attorney in approximately 2001. (*Id.* ¶ 3.) Mr. Guzall served as Assistant City Attorney while employed with Seifman & Guzall. (*Id.* ¶ 8.) In that capacity, he actively represented and advised the City through its employees and public officials, and served as the City's prosecutor. (*Id.* and Ex. 3 at 28.) According to Mr. Seifman, he and Mr. Guzall routinely met and discussed various legal matters and/or issues relating to their representation of the City. (*Id.*, Ex. 1 ¶ 9.) Mr. Seifman states that their discussions included confidential matters related to the City, its employees, and its public officials. (*Id.*)

Mrs. Guzall alleges that her employment with the City was terminated in whole or in part due to her speech on matters of public concern, specifically Mayor Lambert's and Ms. Krampitz's abuse of their positions and/or power and misuse of funds. (*See*, Am. Compl. ¶¶ 26, 27.) For example, Mrs. Guzall alleges that Mayor Lambert used his position to coerce business owners to hire his wife's company, his children, and his friends for employment. (*Id.* ¶¶ 30-31.) Mrs. Guzall also alleges that Mayor Lambert violated campaign finance laws. (*Id.* ¶¶ 73, 78-87.) Further, she

3

claims that he received kick backs from City businesses.  (*Id*. ¶¶ 88, 91-94.)

According to Mrs. Guzall, she "constantly informed City Attorney Seifman and other City officials about what seemed to her to be the failure of Defendants to discharge their governmental responsibilities and/or wrongdoing (illegal and/or improper acts) and/or breach of public trust."  (*Id*. ¶ 27; *see also, e.g. id.* ¶ 154.)  For example, Mrs. Guzall claims that she told Mr. Seifman that several people were listed on Mayor Lambert's campaign finance reports as having given money to his campaign, when they in fact did not, and that Mr. Seifman did nothing to cure the illegal campaign finance report.  (*Id*. ¶¶ 84-85.)  She also indicates that she informed Mr. Seifman of the kick backs and bribes Mayor Lambert was to receive, Mayor Lambert's "tax benefit" schemes, and improper use of campaign finances.  (*Id*. ¶ 88, 140, 143-144, 148-150.)  Although Mrs. Guzall does not name Mr. Seifman as a defendant in her lawsuit, she devotes a considerable portion of her Amended Complaint describing how he "did nothing to cure th[e] improprieties and/or illegalities" she reported and that he "supported and aided in Alan Lambert's improper and/or criminal acts by drafting documents and contracts for Alan Lambert to be allowed to obtain those 'kick backs.'"  (*See, e.g., id*. ¶¶ 89, 90.)

In her Amended Complaint, Mrs. Guzall also alleges that she "was forced by Defendants" to tell her husband that Mayor Lambert expected him to defend the mayor's son when he was arrested and help the mayor's son and other children with

legal matters for free. (*Id*. ¶¶ 113, 114.) Mrs. Guzall claims that her job and Mr. Guzall's job as prosecuting attorney in Romulus were threatened if they did not comply. (*Id*.) Mrs. Guzall asserts, however, that she "did not tell her husband that." (*Id*.)

Mr. Guzall resigned from Seifman & Guzall, P.C. on or about February 6, 2012. (*Id*. ¶ 7.) Mr. Seifman has charged Mr. Guzall with wrongfully taking various firm client matters and litigation between the two former partners is currently pending in the Circuit Court for Oakland County, Michigan ("Oakland County litigation"). (*Id*. ¶ 10.) On April 16, 2012, Mr. Guzall was deposed in the Oakland County litigation.

During his deposition, Mr. Guzall testified that he "acted as an attorney for the city" while employed at Seifman & Guzall. (Defs.' Mot. Ex. 3 at 26, ECF No. 31-4.) In the resignation letter that he wrote to Mr. Seifman, Mr. Guzall accused Mr. Seifman of engaging in wrongdoing and wrote, specifically, with respect to the City:

> Further, there have been so many problems with the Romulus account that I really fear that you may be looked at in terms of criminal charges, if any of the things I have heard are true. I am very upset that you have put the Firm and my name at risk.

(*Id*. at Attach. 5.) When asked about this allegation at his deposition in the Oakland County litigation, Mr. Guzall asserted the attorney-client privilege and refused to testify, stating:

A.  Well, the things that I heard. I mean, there were things that Barry and I discussed, but the other issue I have is, I mean, I - I don't hold the attorney/client privilege, so things that I heard came from employees of the City of Romulus and/or employees, officials, whatever you want to call them.

Q.  Okay. Let's start with who those employees are. Who did you hear whatever it is that you were talking about from?

A.  From my wife.

Q.  Okay. What did you hear from your wife?

A.  That– again, that's– she's employed by the city.

. . .

A.  There were things that I learned when she was an employee and there were things I learned when she was laid off, and whether she was still employed at that time– and I can't remember specifically which month, but I know there were conversations between Seifman and myself in regards to some of those issues. If the city wants to waive that privilege, I'd be more than happy to tell you everything I know.

Q.  But right now the only people– the only question before you really is– well, I'm sorry. I did ask what your wife told you, and you're asserting the attorney/client privilege with regard to what your wife told you?

A.  It's not my privilege. It's the city's privilege. If the city wants to waive their privilege as to anything that I know, I'm more than happy to tell you everything I know.

Q.  One of the people that told you whatever it is that you interpreted to mean something criminal was your wife. Who else at the city told you – employees of the city– who else told you about something that you think put Mr. Seifman at risk of criminal charges?

> A. There were other employees– various other employees, but, specifically– I can't remember specifics other than, I mean, possibly Betsy Krampitz.
>
> . . .
>
> Q. Okay. Anybody else?
>
> A. Yeah. You know, I had lots of conversations with police officers, the former chief of police, various other employees in the city, Rendall Wooden.
>
> . . .
>
> A. . . . I mean, the mayor himself. I talked to, you know, the council people. I talked to a lot of employees there.
>
> Q. And what was [sic] the criminal charges that you think Seifman was [sic] subject to?
>
> A. Again, I don't know if I'm – if I'm getting into issues of attorney/client privilege or not, and I don't – I don't want to have an issue with me giving up information. If the city wants to waive it, I'll tell you everything you want to know. I don't want to have an issue with someone coming after me for attorney/client privilege matters.
>
> Q. . . . Did you confront Mr. Seifman regarding these potential charges?
>
> A. Yes.
>
> Q. Okay. What did you say?
>
> A. Well, that's the problem, because he's city attorney and I'm a city attorney. We're both representing the client at the same time. That's fine. But for me to tell you, that's a problem.

(*Id*., Ex. 3 at 60-65, ECF No. 31-4.) Defendants attach the affidavit of the City's

7

current mayor, LeRoy D. Burcroff, to their pending motion, in which Mayor Burcroff asserts the City's position with respect to Mr. Guzall's representation of Mrs. Guzall in the pending matter:

> Given the nature of Mr. Guzall's previous relationship with the City of Romulus as well as conceivable use and/or reference to information obtained in this capacity and thus, subject to the attorney-client privilege, while representing the named Plaintiff's interests against the City in this case, the City of Romulus has not consented and does not consent to Mr. Guzall's representation of Marianne Guzall in this action pursued directly against his former client, the City of Romulus.

(*Id.*, Ex. 2 ¶ 10, ECF No. 31-3.)

## II. Defendants' Arguments & Mrs. Guzall's Response

In their motion, Defendants identify several bases that they believe justify the disqualification of Mr. Guzall as Mrs. Guzall's counsel in this matter. They first argue that, in his position as City Attorney, Mr. Guzall had confidential communications and obtained confidential information from City employees and officials regarding the matters that are at issue before this Court which he is precluded from divulging without the City's consent pursuant to Michigan Rule of Professional Conduct 1.6. Further, Defendants contend that Michigan Rule of Professional Conduct 1.9 precludes Mr. Guzall from representing Mrs. Guzall in a matter that is materially adverse to the interests of his former client, the City. Defendants maintain that Mr. Guzall also will likely be a witness in this action and thus Michigan Rule of Professional Conduct 3.7 prohibits him from acting as Mrs. Guzall's counsel. Finally,

Defendants argue that Mr. Guzall has a financial interest in this litigation because he is married to the plaintiff, and therefore Michigan Rule of Professional Conduct 1.8(j) precludes him from acting as Mrs. Guzall's counsel.

As she did in her Amended Complaint, Mrs. Guzall devotes a substantial portion of her response brief discussing Mr. Seifman's alleged misdeeds. (*See, e.g.*, Pl.'s Resp. Br. at 7-11, ECF No. 32.) Addressing Defendants' arguments, Mrs. Guzall contends that the matters at issue in her lawsuit are not substantially related to the matters for which Mr. Guzall represented the City. Mrs. Guzall indicates that Defendants have not provided the Court with any claimed privileged or confidential information (i.e., facts) that Mr. Guzall obtained during his representation of the City that would justify his disqualification or that would be deemed relevant as testimony here. She seems to also suggest that any relevant information Mr. Guzall obtained through his representation of the City could be revealed in this lawsuit pursuant to the exceptions to the attorney-client privilege set forth in Michigan Rules of Professional Conduct 1.6(c)(3) and (4). (*Id*. at 12.)

### III.  Applicable Law

All courts have the inherent authority to disqualify an attorney from a case. *D.H Overmyer Co. v . Robson*, 750 F.2d 31, 33-34 (6th Cir. 1984). This power should be exercised with great caution, however, as "the ability to deny one's opponent the services of capable counsel, is a potent weapon." *Manning v. Waring, Cox, James,*

*Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988). "[C]ourts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Id.*

A court may disqualify an attorney based on a conflict of interest. *See, Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Alticor, Inc.*, 466 F.3d 436, 437 (6th Cir. 2006). Rule 1.9 of the Michigan Rules of Professional Responsibility sets forth the restrictions on an attorney to represent a party where a conflict of interest with a former client exists:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> (b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client
>
>> (1) whose interests are materially adverse to that person, and
>>
>> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use information relating to the representation to the

> disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

MRPC 1.9. Similar to this rule, the Sixth Circuit holds that an attorney should be disqualified where:

> (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (citations omitted).

It is the movant's burden to prove that opposing counsel should be disqualified. *S.D. Warren Co. v. Duff-Norton*, 302 F. Supp. 2d 762, 767 (W.D. Mich. 2004) (citing *Bartech Indus., Inc. v. Int'l Baking Co.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996)). When making the decision whether to disqualify counsel, the court must conduct a factual inquiry in a manner affording appellate review. *Gen. Mills Supply Co. v. SCA Servs., Inc.*, 697 F.2d 697, 710 (6th Cir. 1982). This requirement is satisfied where the court's inquiry is "conducted on affidavits and documents that would be acceptable under [Federal Rule of Civil Procedure 56] . . . and if the district judge does not undertake to decide disputed issues of fact." *Id*.

## IV. Analysis

There can be no dispute that a past attorney-client relationship between Mr. Guzall and the City existed and that Mr. Guzall acquired confidential information during that relationship. Mr. Guzall admitted these facts during his deposition in the Oakland County litigation. *See supra*. Whether he should be disqualified from currently representing Mrs. Guzall, therefore, is dependent on whether he represented the City in matters "substantially related" to the present case.

The Sixth Circuit recently "explored . . . the contours of what constitutes 'substantially related' " in *Bowers v. Ophthalmology Group*, 733 F.3d 647, 651-53 (2013). The *Bowers* court began its discussion by emphasizing that a former client need not reveal the confidential information learned by its counsel in order to establish that the attorney should be disqualified. *Id*. at 651-52. As stated in a treatise relied on by the court:

> A concern to protect a former client's confidential information would be self-defeating if, in order to obtain its protection, the former client were required to reveal in a public proceeding the particular communication or other confidential information that could be used in the subsequent representation.

*Id*. (quoting Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) (2000)). Thus this Court finds no merit to Mrs. Guzall's assertion that Defendants have not met their burden of proof due to their failure to provide the Court with any "confidential information (facts) they claim attorney Guzall possesses that may allow

for disqualification of him as an attorney in this case." (*See* Pl.'s Resp. Br. at 3, ECF No. 32, emphasis removed.)

The *Bowers* court next reviewed sources defining when a "substantial relationship" exists between the attorney's current and former relationships. 733 F.3d at 651-52. The Sixth Circuit concluded that whether a "substantial relationship" exists should be determined by looking "to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now adverse client." *Id.* at 652. Thus a court "must examine whether there is a substantial risk that confidential information as would normally or typically have been obtained in [the attorney]'s prior representation [of the former client] would materially advance [the opposing party]'s position in the present case." *Id*. at 653. Using these contours, this Court finds a substantial relationship between Mr. Guzall's current and former relationships

The allegations in the Amended Complaint and the evidence attached to the parties' pleadings reflect that Mr. Guzall was exposed to confidential information during his representation of the City that would materially advance Mrs. Guzall's position in the instant case. Mr. Guzall expressly represented during his deposition in the Oakland County litigation that he obtained information protected by the attorney-client relationship during his representation of the City related to wrongdoings connected with the City. As Mr. Guzall stated during his deposition, he learned about

problems "with the Romulus account" from its employees and officials during his representation of the City. Mr. Seifman attests that he and Mr. Guzall routinely met and discussed various legal matters and issues relating to their representation. Although Mr. Seifman does not specifically state that the partners discussed misconduct by Defendants, Mrs. Guzall asserts in her Amended Complaint that she "constantly" informed Mr. Seifman of Defendants' alleged wrongdoings and there is a presumption that associated attorneys share client confidences. *See United States v. Baird*, No. CRIM.A. 6:05-30-DCR, 2005 WL 1676898, at *1 (E.D. Ky. July 15, 2005) (quoting *Hempstead Video Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005)); *see also Harris v. Agrivest Ltd. P'ship II*, 818 F. Supp. 1035, 1040 (E.D. Mich. 1993) ("The reason for disqualifying a partner of a firm from performing work adverse to a former client of that firm is that because of that partner's access to information, he is imputed with all knowledge contained in the firm's files."). This alleged misconduct is the basis for Mrs. Guzall's lawsuit against Defendants and her interests are undoubtedly directly adverse to the City's interests.

Mr. Guzall confirmed the substantial relationship between his past and current representations at the motion hearing. At the hearing, Mr. Guzall told the Court that the confidential information he obtained as an attorney for the City, to which he was referring in his state-court deposition, related to only two matters. He contended that both matters are unrelated to the instant litigation. He described the first matter as

14

concerning a City employee who obtained drugs illegally and the second matter as involving person(s) who improperly appeared on the mayor's campaign finance report. Yet substantial paragraphs of Mrs. Guzall's Amended Complaint assert illegalities with respect to Mayor Lambert's campaign finance reports.[1]

Mrs. Guzall argues that there in fact is not a substantial relationship between the present matter and Mr. Guzall's representation of the City and therefore this case is similar to several cases where no conflict of interest was found: *Eternal Preservation Associates, LLC v. Accidental Mummies Touring Co., LLC*, 759 F. Supp. 2d 887 (E.D. Mich. 2011); *McKane v. City of Lansing*, 861 F. Supp. 47 (W.D. Mich. 1994); and, *Ackerman v. Miotke*, No. 265004, 2006 WL 859471 (Mich. Ct. App. Apr. 4, 2006). In *Eternal Preservation Associates*, the Honorable David M. Lawson in this District found that a conflict existed but did not disqualify the firm representing the defendant because the conflict was not between the defendant and the firm's former client. 759 F. Supp. 2d at 888-89. Similarly, the Michigan Court of Appeals in *Ackerman* found no conflict of interest between clients separately represented by the defendant-attorney in connection with the possible sale of the clients' properties for use in the construction of casinos. 2006 WL 859471, at *2-3.

---

[1] Mrs. Guzall also refers to Ms. Krampitz' alleged illegal drug throughout the Amended Complaint. (*See, e.g.,* Am. Compl. ¶¶ 52-53, 56, 97.) Whether this was the same employee Mr. Guzall referred to at the hearing, however, is unclear.

Of the three cases cited by Mrs. Guzall, *McKane* is most similar to the present matter. There, the attorney representing the plaintiff– Lansing's former mayor who claimed his early retirement benefits under the city's early retirement plan were wrongfully terminated– had represented the city previously in a lawsuit filed by a different former mayor, Gerald Graves. *McKane*, 861 F. Supp. at 47. Mayor Graves' lawsuit against the city concerned his entitlement to compensation for unused sick and vacation days accumulated during his tenure. *Id*. at 49. The District Court for the Western District of Michigan's discussion as to why the attorney's representations of the two former mayors were not substantially related illustrates how the present matter is distinguishable:

> . . . in the *Graves* case, Mr. Graves alleged he was entitled to compensation for unused sick and vacation days accumulated during his tenure as Mayor and previously as a member of the City Council. Payment for unused sick and vacation days was a benefit available to all regular, full-time employees of the City. Thus, the case turned upon whether Mr. Graves was a public employee or a public official. The instant case, Mr. McKane submits, is quite different. Here the issue is whether Mr. McKane is entitled to early retirement benefits under an early retirement incentive plan adopted by the City in 1992. The Plan had not even been enacted at the time of the prior representation. Mr. McKane insists that he is not disputing his employment status. At issue, instead, is the intent of the City Council regarding inclusion of elected officials in the retirement plan.
>
> At oral argument, Mr. Blaine represented to the Court that his representation of the City in *Graves* did not afford him knowledge of any confidential information. Counsel for the defendants responded that they were not claiming that Mr. Blaine possessed any confidential information from the prior representation that he could bring to bear on

the instant case.

*Id.* at 49.

There is no exception that permits Mr. Guzall to reveal the City's confidential information. Contrary to Mrs. Guzall's suggestion, the exceptions in subsection (3) and (4) of Michigan Rule of Professional Responsibility 1.6 are not applicable here. Those provisions state:

> (c) A lawyer may reveal:
> . . .
>
> (3) confidences and secrets to the extent reasonably necessary to rectify the consequences of a client's illegal or fraudulent act in the furtherance of which the lawyer's services have been used;
>
> (4) the intention of a client to commit a crime and the information necessary to prevent the crime . . .

MRPC 1.6. Mrs. Guzall has not suggested that *Mr. Guzall's* services were used by the City to engage in illegal or fraudulent conduct or that Mr. Guzall would be revealing confidential information to rectify the consequences of such conduct. There also is no suggestion that the disclosure would prevent a future crime. *See People v. Paasche*, 525 N.W.2d 914, 917-18 (Mich. Ct. App. 1994) (explaining that it is "advice [that] refers to future, not past, wrongdoing" to which the crime-fraud exception to the attorney-client privilege applies); *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127 (E.D. Mich. 2009) (same).

**V. Conclusion**

In summary, Mr. Guzall formerly represented the City and obtained confidential information during that representation which is relevant to the present litigation. His current client's interests are materially adverse to the interests of his former client. The City does not consent to Mr. Guzall's representation of Mrs. Guzall in this litigation. For these reasons, he must be disqualified from serving as Mrs. Guzall's attorney.

Accordingly,

**IT IS ORDERED**, that Defendants' Joint Motion to Disqualify Plaintiff's Counsel is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff shall obtain new counsel who shall enter his or her appearance within thirty (30) days of this Opinion and Order or Plaintiff will be presumed to be proceeding pro se.

> S/ Linda V. Parker
> LINDA V. PARKER
> U.S. DISTRICT JUDGE

Dated: September 3, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 3, 2014, by electronic and/or U.S. First Class mail.

> S/ Richard Loury
> Case Manager